Anthony J. Nunes (SBN 290224)
Nunes Law Group, APC
15260 Ventura Blvd, Suite 1200
Sherman Oaks, CA 91403
Telephone: (855) 422-5529
tony@nunesworkerrightslaw.com

Attorneys for Plaintiff LUTHER SMITH, on behalf of himself and all others similarly situated

**UNITED STATE DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUTHER SMITH, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FEDERAL EXPRESS CORPORATION, a California corporation, doing business as FEDEX, and DOES 1-10,<br><br>Defendants. | Case No. 3:25-CV-05544<br><br>**COLLECTIVE ACTION COMPLAINT FOR:**<br><br>1. Wrongful Termination (42 U.S.C. § 1981, et seq.)<br>2. Collective Action - Violation of the Fair Labor Standards Act (29 U.S.C. 201, et seq.)<br>3. Failure to Pay Minimum Wage<br>4. Failure to Pay Overtime<br>5. Failure to Provide Meal Periods<br>6. Failure to Provide Paid Rest Breaks<br>7. Failure to Pay All Wages at Termination<br>8. Unfair Business Practices (California Business & Practices Section 17200)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Luther Smith, on behalf of himself and all others similarly situated, alleges each of these causes of action against Defendants as follows:

## I. INTRODUCTION

1. Plaintiff LUTHER SMITH (hereinafter "Plaintiff") was a "Delivery Driver" for Defendant "FEDERAL EXPRESS CORPORATION," (hereinafter "Defendant" or "FedEx") in San Francisco, California.

2. Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff alleged Defendant violated EEOC Section 1981 of Title 42 of the United States Civil Code. 42 U.S.C. § 1981

3. On May 5, 2025, the EEOC issued a 90-Day Right to Sue Notice. Accordingly, Plaintiff exhausted his administrative requirements. A copy of the Right-to-Sue Notice was served on Defendant.

4. Defendants violated the U.S. Fair Labor Standards Act, California's Labor Code, and California Industrial Welfare Commission (IWC) Wage Order No. 9-2001, which include:

a. Failing to pay minimum wage for every hour worked;

b. Failing to pay Plaintiff overtime wage when applicable;

c. Failing to pay Plaintiff premium wages for missed meal periods;

d. Failing to pay Plaintiff premium wages for missed rest periods;

e. Failing to maintain accurate employment records for Plaintiff; and

f. Failing to pay Plaintiff amounts owed at the end of his employment.

5. Plaintiff seeks unpaid wages and penalties for Labor Code violations.

6. Plaintiff further seeks general, special, and compensatory damages owed to Plaintiff for wrongful termination, harassment, retaliation, and discrimination.

## II. JURISDICTION AND VENUE

7. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 29 U.S.C. § 206(a)(1), and 42 U.S.C. § 1981.

8. Federal jurisdiction is proper due to Defendants' violations of the minimum wage provision of the U.S. Fair Labor Standards Act. 29 U.S.C. § 206(a)(1). As described herein, Plaintiff alleges Defendants failed to pay any wages for off-the-clock work.

9. Plaintiff alleges that Defendants systematically violate the Fair Labor Standards Act ("FLSA") by failing to provide Plaintiff and other FLSA class members minimum wage for all hours worked.

10. Venue lies within the Northern California District because Defendant have and continue to operate in San Francisco, California in the Northern California

District. Plaintiff worked in San Francisco and the injuries that are the subject of this lawsuit arose in San Francisco.

## III. PARTIES

**Plaintiff**

11. Plaintiff is a resident of San Francisco County, California. At all relevant times herein, Plaintiff was employed by Defendants as a Driver.

**Defendants**

12. Plaintiff alleges on information and belief that Defendant FEDERAL EXPRESS CORPORATION, a California corporation, doing business as FEDEX ("Defendant" or "FedEx") in San Francisco County.

13. Plaintiff alleges on information and belief that Defendants issues policies and procedures for all non-exempt employees working for Defendants.

14. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued here in as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that Defendants designated herein as DOE(S) are legally responsible in some manner for the unlawful acts referred to herein.

15. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOE(S) when such identities become known.

16. Plaintiff is informed and believes and thereon alleges that at all relevant times each Defendant, directly or indirectly, or through agents or other persons, employed Plaintiff, and exercised control over the wages, hours, and working conditions of Plaintiff.

17. Plaintiff is informed and believes and thereon alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged.

18. Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

## IV. GENERAL ALLEGATIONS

19. Plaintiff Luther Smith was employed by Defendant Federal Express Corporation (hereinafter "Defendant" or "FedEx") from June 2018 to February 2024.

20. Plaintiff drove a large, big box truck ("Type 900") for Defendant. As a result of his outstanding job performance, Plaintiff was assigned a route delivering and picking-up packages in-and-around San Francisco's Union Square.

21. The Union Square route is considered perhaps the most difficult route in San Francisco due to being a highly congested, busy area filled with department stores, other businesses, hotels, tourism, and narrow side streets. Plaintiff would pick-up more packages than any other San Francisco route.

22. Plaintiff worked for Defendant (in "Group 7") for five-and-a-half years. He was a model employee and received outstanding performance reviews until a new manager took over his department in approximately August 2023.

23. Plaintiff twice received Defendant's "Bravo Zulu" Award (a U.S. Navy term meaning "well done") in recognition of employees whose outstanding performance exceeds normal job duties. One prior manager stated in a manager evaluation that "I feel blessed to have you on my team" and that Plaintiff had shown his "dedication to everything this company stands for."

24. Another prior manager stated in a manager evaluation that:

> I received a call from FedEx Office manager David who wanted to put in a compliment about you. He stated that you are always friendly and hard working. He spoke about how he knows he can count on you no matter how big the task. He also mentioned how you are always willing to help out the pick-up driver that comes later in the day and he knows he can call on you if an unforeseen issue arises. We want to thank you for you continued efforts in providing the purple promises to all our customers. Great Job! (9/10/2020)

And in another manager evaluation that:

> Luther, I cannot thank you enough for all the support you have given to work group 7. You're always willing to help train and support our new couriers does not go unnoticed. I watch how you always take every opportunity to not only help your peers in need but help me dissolve open delivery and pick up routes. Your great attitude is infectious and really makes a huge difference to everyone around you. I very much admire the strength that you show when your 900 is completely bulked out and you make sure that not only is every package is delivered on time but your customers have had the best FedEx experience possible. (4/7/2022)

25. A new manager (hereinafter "Plaintiff's manager") took over Plaintiff's department (Group 7) in approximately August 2023.

26. Plaintiff alleges Plaintiff's manager gave him a disproportionate amount of work and purposefully assigned him vehicles with mechanical issues.

27. Plaintiff alleges the adverse actions taken against him were a pretext for Plaintiff's manager removing the only Black employee in Group 7 and a whistleblower.

28. Plaintiff's manager would do "ride alongs" with all the other drivers on his staff except Plaintiff. Plaintiff's manager criticized Plaintiff for working too slow, but since he would not do a ride along, he did not understand the unique difficulty of Plaintiff's Union Square route.

29. Of the approximately seven drivers typically under Plaintiff's manager in Group 7, Plaintiff was the only driver who had packages given to other drivers. This resulted in reduced hours and less compensation for Plaintiff.

30. Plaintiff's manager capriciously asserted authority over Plaintiff. For example, without reason he removed the last package from Plaintiff's route. A shift supervisor inquired why Plaintiff was being directed to inconveniently and unnecessarily return to the station instead of completing his route, but there was no logic for the decision.

31. Another driver under Plaintiff's manager's supervisor is notorious for drinking in his truck while on the job. Plaintiff's manager and his staff joked about the driver inability to park straight due to intoxication, took pictures of bad parking jobs, and his truck was known as the "party truck."

32. Plaintiff's manager was well aware of this on-the-job drinking, yet this non-minority driver faced no disciplinary actions.

33. Plaintiff complained that he was being directed by his manager to drive in bus lanes to increase productivity and this created safety issues.

34. Plaintiff also notified management regarding safety issues concerning the maintenance of vehicles. Plaintiff's manager ignored the safety complaint and continued to assign Plaintiff to trucks with mechanical problems.

35. Plaintiff also raised safety concerns regarding vehicle temperatures, in particular heat in the back of the vans during the summer.

36. Plaintiff made complaints regarding discriminatory treatment from his manager to Defendant's human resources department.

37. On information and belief, Plaintiff alleges no good faith investigation in Plaintiff's manager occurred.

38. When Plaintiff refused to a sign false "corrective action" report, Plaintiff's manager stated that it did not matter because he would sign on Plaintiff's behalf.

39. Plaintiff was told he was terminated for running an errand to pay an AT&T phone bill during his shift and for missing package scans.

40. Missed package scans is a ubiquitous problem drivers try to avoid, but realistically deal with every day. Plaintiff alleges other drivers working under the same manager routinely miss far more scans and a higher percentage of scans without consequences.

41. Multiple drivers working for Plaintiff's manager have scanning issues on a daily basis without write-ups, termination, or any consequence.

42. On his last work day before his suspension, Plaintiff's manager falsely accused Plaintiff of stealing packages from the Neiman Marcus department store. Plaintiff maintains that the department store carefully tracks the number of packages it has for pick-up and the number of outgoing scans recorded by drivers.

43. Plaintiff's manager also falsely accused Plaintiff of inappropriately spending three hours with his work truck at the San Francisco Airport. Plaintiff would drive to the airport to pick-up packages, but maintains this never happened and is a part of pattern of false accusations by his manager.

44. Plaintiff was suspended on December 15, 2023, for reportedly missing "van scans" that day. Each of the four allegedly missed van scans were delivered on-time.

45. Plaintiff was told it would it was Defendant's policy not to take more 14-days to investigate his suspension.

46. Plaintiff explained to human resources that Friday, December 15, 2025, was an extremely busy day for picking up packages in advance of Christmas. Additionally street closures in Union Square created further delays. In order avoid not being able to pick up packages on time, he was forced to delay the "van scans" of packages he already picked-up.

47. Defendant investigated the missing scans and Plaintiff was finally notified of the decision to terminate him 10-weeks later on February 20, 2024.

48. Plaintiff alleges that Defendant was aware that another Black driver had previously filed a race-based discrimination complaint against Plaintiff's manager.

49. With Plaintiff's termination, Plaintiff's manager's Group 7 no longer had any Black employees, despite Black workers comprising approximately 25% of FedEx drivers at the San Francisco station-wide.

50. On information and belief, Plaintiff's manager is the current Group 7 manager and still currently does not have any Black employees.

51. Plaintiff regularly experienced technical problems with his scanning device, which resulted in missed scans. Other drivers experienced similar device issues, but were not terminated.

52. Plaintiff's manager disproportionally gave extra work to Plaintiff near the end of his employment. Plaintiff alleges this increased workload was part of a consist pattern of targeting and harassing Plaintiff.

53. Plaintiff alleges that a co-worker asked Plaintiff's manager to "stop harassing" Plaintiff in response to the manager's habit of distracting Plaintiff with work questions while he was trying to removing packages from a conveyor belt. Again, Plaintiff's manager did not use this tactic or treat his other drivers this way.

54. Plaintiff's manager harassing Plaintiff more aggressively than other employees and held Plaintiff to a different standard than non-Black or African American employees.

55. Plaintiff's manager's actions were discriminatory based on animus toward Plaintiff based on race.

56. Plaintiff's manager's actions were also retaliation for Plaintiff's complaints about health and safety issues, as well as Defendant's California Labor Code violations.

57. The stated reason for termination (missed scans and alleged personal business on company time) were false and pretextual. Similar conduct by other non-Black drivers did not result in adverse action.

58. Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff alleged Defendant violated EEOC Section 1981 of Title 42 of the United States Civil Code. 42 U.S.C. § 1981

59. On May 5, 2025, the EEOC issued a 90-Day Right to Sue Notice. Accordingly, Plaintiff exhausted his administrative requirements. A copy of the Right-to-Sue Notice was served on Defendant.

60. Plaintiff alleges that throughout his employment, Defendants implemented and maintained a company-wide policy to pay non-exempt employees less than the applicable minimum wage by failing to pay employees for

all hours worked. Defendants were aware of the fact that under their system, Plaintiff regularly worked unpaid hours and/or worked for compensation at less than the applicable minimum wage.

61. Plaintiff alleges that throughout his employment, Defendants also failed to provide overtime wages earned for all hours worked by Plaintiff and other FLSA class members in excess of eight hours per day and/or forty hours per week.

62. Where overtime compensation was received at all, it was for fewer than all overtime hours worked and was paid at less than the amount required by law.

63. Throughout Plaintiff's employment, Plaintiff and other drivers would consistently work off-the-clock to avoid accruing additional hours worked.

64. Defendant was aware that Plaintiff would regularly clock-out and continue to work off-the-clock and without any compensation.

65. Plaintiff alleges that Plaintiff and other FLSA class members would be stuck waiting unpaid outside gates to start their shifts. Other times they would be required to wait unpaid before being allowed to start their delivery routes.

66. Plaintiff alleges that throughout his employment, Defendants also failed to provide Plaintiff and others similarly situated with all the required meal periods when they worked more than five hours in a day; and Defendants failed to pay employees a one-hour premium wage in lieu thereof.

67. Plaintiff alleges that in order to meet Defendants' workload requirement, Plaintiff and other delivery drivers frequently worked through meal periods and rest breaks.

68. Defendants' managers are aware and, in some cases, directed the delivery drivers to manipulate their timecard to show breaks that were skipped.

69. Plaintiff and other drivers would sometime deliberately delay the time when packages were scanned to create half-hour breaks.

70. Defendant was aware drivers were creating fake breaks by not scanning packages right away, but instead waiting until enough time passed to create a "30-minutes break" in the records.

71. Defendant's supervisors would manually change employees' time records to reflect meal breaks that were not actually taken. Drivers did not consent to these time adjustments.

72. Defendant systematically manipulates time cards. Plaintiff and other employees were required to work through meal and rest breaks, but managers would edit time records to avoid paying a 1-hour premium for each missed break.

73. The timekeeping system will show overrides or adjustments made by management. Drivers, including Plaintiff, were consistently required to work through meal and rest breaks.

74. Drivers were not encouraged to take their breaks. Rather Defendant's manager monitored for gaps in scanning activity and penalized employees for any gap longer than 10 minutes.

75. Defendant also sometimes refused to pay out accrued vacation hours. For example, drivers would be not able to use request vacation pay or when it was paid there were delays of up to three weeks or more. Vacation pay was sometimes paid in lump sums rather than as regular vacation days, resulting in higher tax deductions for the employee.

76. Employees did not have access to their own time records or the ability to verify or contest changes made by management. Only managers could make and view adjustments, and employees were not notified or given documentation of these changes. Drivers would not sign off on time adjustments and no such acknowledgment was obtained for edits.

77. Plaintiff and other drivers also did not receive a second meal period when working shifts of 10 hours or more.

78. Labor Code Section 512 states that an "employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes" if and when such employees work more than 5 hours in any given workday. Labor Code Section 512

further requires two 30 -minute duty-free meal periods when an employee works more than 10 hours in any given workday.

79. Plaintiff alleges that Defendants' corporate policies, procedures, and uniform understaffing, were either written or institutionalized into each Defendant's labor practices, such that Plaintiff was not able to, or permitted to, take timely rest breaks or lunch periods, pursuant to the Labor Code, Industrial Welfare Commission Wage Order 5-2001, and other applicable Wage Orders.

80. Plaintiff alleges that throughout his employment, Defendants failed to provide Plaintiff and other similarly situated with timely and accurate wage and hour statements.

81. Plaintiff alleges Defendants did not maintain adequate records pertaining to when Plaintiff and other FLSA class members began and finished each work period; meal/rest breaks; hours worked per day; hours worked per pay period; and applicable rates of pay for all regular hours and overtime.

82. Plaintiff alleges that Defendants have maintained and continue to maintain uniform practices and procedures which are in inconsistent with state and federal law.

83. Plaintiff alleges that throughout his employment, Defendants engage in uniform policies and conduct, as alleged herein resulting in violations of Labor Code §§ 201, 202, 203, 204, 226, 226.7, 510, 1194, and 2750.5.

84. Plaintiff brings this action pursuant to Business and Professions Code §§ 17200-17208, seeking injunctive relief and restitution of all benefits obtained by Defendants by engaging in the unlawful conduct complained herein.

85. The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued here in as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that Defendants designated herein as DOE(S) are legally responsible in some manner for the unlawful acts referred to herein.

86. Plaintiff will seek leave of court to amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOE(S) when such identities become known.

87. Plaintiff is informed and believes and thereon alleges that, at all relevant times, each Defendant was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other Defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged below.

88. Plaintiff is informed and believes and thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, that each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

89. Plaintiff brings this cause of action on behalf of himself and on behalf of all persons similarly situated, ("the class" or "FLSA class") as alleged herein. This action is brought and may properly be maintained as a collective action pursuant to the provisions of the Fair Labor Standards Act (29 U.S.C. 201, et seq.).

90. The proposed FLSA class Plaintiff seeks to represent is presently defined as follows:

> **Proposed Collective Action Class:**
>
> All of the current and former delivery drivers for Defendants within the four years prior to the date of the filing of this Complaint through the date of the final disposition of this action.

91. Plaintiff is a member of the proposed class.

92. There is a well-defined community of interest in the litigation and the class is ascertainable.

A. **<u>Numerosity</u>**: The class is so numerous that individual joinder of all members is impractical under the circumstances of this case.

B. **Common Questions Predominate**: Common questions of law and fact exist as to all class members, and predominate over any questions that affect only individual members of the class. The common questions of law and fact include, but are not limited to:

i. What were and are the policies, programs, practices, procedures and protocols of Defendants regarding class members' actual work and tasks, and their job duties irrespective of job titles;

ii. Whether Defendants violated the FLSA by their practices whereby class members were working off-the-clock and without compensation;

iii. Whether Defendants violated California law by their policies, programs, practices, procedures and protocols regarding rest periods for class members;

iv. Whether Defendants violated California law by their policies, programs, practices, procedures and protocols regarding lunch breaks for class members;

v. What were and are the policies, programs, practices, procedures and protocols of Defendants regarding furnishing to the class members, upon each payment of wages, itemized statements required by Labor Code section 226;

vi. Whether Defendants violated California law by their policies, programs, practices, procedures and protocols regarding furnishing to the class members, upon each payment of wages, itemized statements required by Labor Code section 226;

vii. Whether Defendants violated California's Business & Professions Code sections 17200 *et seq.* by their policies, programs, practices, procedures and conduct referred to in this cause of action;

viii. Whether Defendants obtained voluntarily waivers with consent and full disclosure, and whether a written signed waiver is effective as to all future meal and rest periods;

ix. The proper measure of damages sustained and the proper measure of restitution recoverable by members of the California class; and,

x. Additional common questions of law and fact may develop as the litigation progresses.

C. **<u>Typicality</u>**: Plaintiff's claims are typical of the claims of the class. Plaintiff and other class members sustained losses, injuries and damages arising out of the Defendants' common policies, programs, practices, procedures, and course of conduct referred to in each cause of action and throughout this Complaint, which were applied uniformly to class members as well as Plaintiff.

Plaintiff seeks recoveries for the same types of losses, injuries, and damages as were suffered by the other class members as well as Plaintiff.

D. **Adequacy**: Plaintiff and his counsel will fairly and adequately protect the interests of the class. Plaintiff have no interest that is adverse to the interests of the other class members.

E. **Superiority**: A FLSA class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all class members is impractical. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions engender. Also, because the losses, injuries and damages suffered by each of the individual class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public of adjudication of individual litigation and claims would be substantial, and substantially more than if the claims are treated as class action. Individual litigation and claims would also present the potential for inconsistent or contradictory results.

F. **Public Policy Considerations**: Defendants and other employers throughout the state violate wage and hour laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are often fearful of bringing claims because doing so can harm their employment and future efforts to secure employment. FLSA provides class members who are not named in the complaint a degree of anonymity that allows for vindication of their rights while eliminating these risks, or at least enormously reducing them.

## CAUSES OF ACTION

### First Cause of Action

### Discrimination and Retaliation on the Basis of Race (42 U.S.C. § 1981)

93. Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

94. Plaintiff alleges Defendants wrongfully terminated Plaintiff's employment without good, just, or legitimate cause. Rather, Defendant's termination of Plaintiff's employment was arbitrary, unjust, and done in bad faith.

95. Plaintiff's manager's actions were discriminatory and/or retaliatory due to animus toward Plaintiff based on race.

96. Plaintiff alleges his manager harassed, retaliated, and discriminated against him as the only remaining Black and African American employee in Defendant's Group 7.

97. Plaintiff's manager violated federal law by: assigning a disproportionate workload based on race; purposefully assigning Plaintiff trucks with mechanical issues; refusing to do ride-alongs with Plaintiff; removing packages from Plaintiff's route without cause, reducing Plaintiff's hours and thus compensation; ignoring Plaintiff's safety complaints about driving in bus lanes and vehicle maintenance; and making false accusations about Plaintiff stealing packages and allegedly inappropriate use of a work vehicle.

98. Plaintiff was suspended on December 15, 2023, for missing van scans, though all packages were delivered on time.

99. Despite policy stating investigations shouldn't exceed 14 days, he was terminated 10 weeks later on February 20, 2024. After his termination, Group 7 had no Black employees despite Black workers comprising approximately 25% of Defendant's San Francisco drivers.

100. Plaintiff further alleges his termination was a proximate result of Plaintiff's numerous complaints to Defendants' managers reporting that Defendants created a hostile work environment characterized by racism and intimidation tactics.

101. Plaintiff engaged in protected activities under public policy, including reporting harassment, racial discrimination, and unsafe working conditions by Defendant.

102. Defendants failed to investigate the Plaintiff's complaints and instead retaliated against him.

103. Defendants have violated Section 1981 by subjecting Plaintiff to discrimination on the basis of race and ethnicity by terminating Plaintiff's employment.

104. As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of Section 1981, Plaintiff had suffered damages in an amount subject to proof, but which are in excess of the jurisdictional minimum of this Court, and which include but are not limited to, accrued but unpaid salary, bonuses and benefits (including pre-judgment interest thereon), front pay, back pay, severance pay, and damages for emotional distress.

105. WHEREFORE, Plaintiff seeks relief as described herein and below.

## **Second Cause of Action**

### **Violations of the Fair Labor Standards Act (“FLSA,” 29 U.S.C. 201, *et seq*.)**

106. Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

107. Plaintiff is informed and believe, and thereon alleges, that Defendants have required collective class members, as part of their employment, to work without receiving the minimum wage for all hours worked, under 29 U.S.C. § 206(a). That section provides the following: “Every employer shall pay to each of their employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the [minimum wage].

108. Plaintiff is informed and believes, and thereon alleges that Defendants have required, or require collective class members, as part of their employment, to work without compensation.

109. Plaintiff alleges Defendant violated FLSA and California labor laws by: failing to pay minimum wage for all hours worked; not providing overtime compensation; requiring off-the-clock work; failing to provide required meal periods; manipulating time records to show breaks that weren't taken; penalizing employees for gaps in scanning activity longer than 10 minutes; refusing to pay accrued vacation hours; and not providing second meal periods for shifts over 10 hours.

110. Plaintiff alleges Defendants implemented and maintained policies to pay non-exempt drivers less than the applicable minimum wage by failing to pay for hours worked.

111. Defendants were aware of the fact that under their system, Plaintiff and FLSA class members regularly worked unpaid hours and/or worked for compensation at less than the applicable minimum wage.

112. During the liability period, Defendants have routinely failed to pay Plaintiff the minimum wage required under California and federal law. Plaintiff's timecards and pay stubs did not list his actual regular and overtime hours worked.

113. Plaintiff alleges that Defendants systematically violates the Fair Labor Standards Act by failing to provide Plaintiff and other FLSA class members with minimum wage for all hours worked.

114. Defendants' violations of the FLSA were willful and are ongoing.

115. Plaintiff proposes to undertake appropriate proceedings to have the collective class members aggrieved by Defendants' unlawful conduct notified of the pendency of this action and given the opportunity to join this action as Plaintiff, pursuant to 29 U.S.C. § 216(b), by filing written consents / joinders with the Court.

116. Attached hereto as **Exhibit A is** Plaintiff's signed Fair Labor Standard Act Consent to Join form for this collective action.

117. As a result of Defendants' unlawful conduct, Plaintiff and the collective class members have suffered damages as set forth herein.

118. As a result of the foregoing, Plaintiff seeks judgment against Defendants on their own behalf, and on behalf of those collective class members

similarly situated who file written consents to join in this action, for all unpaid wages owed by Defendants to Plaintiff and the collective class members, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interests, and reasonable attorneys' fees, pursuant to, *inter alia*, 29 U.S.C. § 216(b).

119. WHEREFORE, Plaintiff seeks relief as described herein and below.

## Third Cause of Action

### Failure to Pay Minimum Wage
### (Labor Code §§ 1182.12, 1194, 1197 and 1197.1, IWC Wage Orders)

120. Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

121. During the liability period, Defendants have routinely failed to pay Plaintiff for each hour suffered or permitted to work.

122. Throughout Plaintiff's employment, Plaintiff was pressured by Defendant, including Plaintiff's manager work off-the-clock to avoid accruing additional hours worked.

123. Plaintiff alleges Defendant violated FLSA and California labor laws by: failing to pay minimum wage for all hours worked; not providing overtime compensation; requiring off-the-clock work; failing to provide required meal periods; manipulating time records to show breaks that weren't taken; penalizing employees for gaps in scanning activity longer than 10 minutes; refusing to pay

accrued vacation hours; and not providing second meal periods for shifts over 10 hours.

124. Defendant's management was aware that Plaintiff would regularly clock-out and continue to work off-the-clock and without any compensation.

125. At all relevant times, the Industrial Welfare Commission Wage Orders contained in Title 8 of the Code of Regulations (Wage Orders) applied to Plaintiff in his capacity as an employee of Defendants. The Wage Orders and California law provided, among other things, that employees must receive minimum wage earnings for all hours worked.

126. Plaintiff pay stubs did not list his accurate regular and overtime hours worked. Plaintiff worked unpaid hours for Defendants as a part of systematic pattern of Defendants' failing to pay employees for all hours worked.

127. During the liability period, Defendants have routinely failed to pay employees the minimum wage required under California law.

128. Labor Code Section 1194 provides in pertinent part: "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."

129. Labor Code Section 1197 provides that the "minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."

130. Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1 and the applicable Wage Order, Wage Order No. 9, by willfully failing to pay all minimum wages due to Plaintiff.

131. Plaintiff seeks all actual, consequential and incidental losses and damages, including, unpaid minimum wages, interest thereon, attorneys' fees, and costs.

132. WHEREFORE, Plaintiff seeks relief as described herein and below.

## Fourth Cause of Action

**Failure to Pay Wages at California Overtime Rate (Lab. Code § 1194, IWC Wage Orders, and Related Violations)**

133. Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

134. Throughout Plaintiff's employment, Plaintiff would consistently work off-the-clock to avoid accruing overtime hours.

135. Plaintiff's manager was aware that Plaintiff would regularly clock-out and continue to work with any compensation.

136. Plaintiff alleges Defendants failed to provide overtime wages earned for all hours worked by Plaintiff in excess of eight (8) hours per day and/or forty (40) hours per week. Where overtime compensation was received at all, it was for fewer than all overtime hours worked and was paid at less than the amount required by California law.

137. Throughout the liability period, Plaintiff worked in excess of forty (40) hours per week and/or in excess of excess of eight (8) hours per day.

138. Defendants were actually aware that Plaintiff was regularly working overtime virtually during the liability period, but Defendants failed and refused to pay Plaintiff for his overtime hours. Throughout the period applicable to this cause of action, Defendants did not pay Plaintiff at the required overtime rate.

139. Pursuant to Labor Code section 1194, Plaintiff is entitled to recover unpaid overtime compensation, and other unpaid wages, interest, plus attorneys' fees and costs.

140. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants in an amount to be established at trial, prejudgment interest, and attorneys' fees and costs, pursuant to statute and other applicable law.

141. WHEREFORE, Plaintiff seeks relief as described herein and below.

## Fifth Cause of Action

### Failure to Provide Meal Periods
### (Labor Code §§ 226.7 and 512)

142. Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

143. Throughout the period applicable to this cause of action, California law, as set forth in relevant part by the Industrial Welfare Commission Wage Order No. 9 at section (11), provided as follows:

> i. No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes
>
> . . .
>
> ii. If an employer fails to provide an employee a meal period in accordance with the applicable provisions of this Order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each work day that the meal period is not provided.

144. Labor Code Section 512 states that an "employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes" if and when such employees work more than 5 hours in any given workday. Labor Code Section 512 further requires two 30 -minute duty-free meal periods when an employee works more than 10 hours in any given workday.

145. Labor Code section 226.7 requires payment of one (1) hour of pay in lieu of each meal periods not provided by the employer.

146. Throughout the period applicable to this cause of action, Defendants failed to consistently allow and provide one or more duty-free 30-minute meal periods in violation of Labor Code section 510 and Wage Order No. 9, as required by California law.

147. By virtue of this unlawful conduct, Plaintiff is entitled to compensation as stated above, plus interest, attorneys' fees, costs and other applicable relief.

148. Throughout the period applicable to this cause of action, Defendants required Plaintiff to work during meal periods mandated by the applicable orders of the Industrial Welfare Commission. Therefore, Plaintiff is entitled to be paid as stated in Labor Code section 226.7, plus interest, attorneys' fees, costs and other applicable relief.

149. Plaintiff did not voluntarily or willfully waive rest and/or meal periods and were regularly required to work through meal periods. Defendants failed to meet the requirements for lawful on-duty meal periods and/or instituted a course of conduct that created a working environment in which non-exempt employees were incapable of taking rest and/or meal periods. As such, non-exempt employees were

intimidated or coerced into waiving meal periods, and any written waivers were obtained without full disclosure and are thus involuntarily and without consent.

150. WHEREFORE, Plaintiff seeks relief as described herein and below.

## Ninth Cause of Action

### Failure to Provide Rest Breaks
### (Labor Code §§ 226.7 and 512)

151. Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

152. Plaintiff alleges Defendants also failed to provide Plaintiff with all the required rest breaks. Additionally, Defendants failed to pay Plaintiff a one-hour premium wage in lieu thereof.

153. The timekeeping system will show overrides or adjustments made by management. Drivers, including Plaintiff, were consistently required to work through meal and rest breaks.

154. Drivers were not encouraged to take their breaks. Rather Defendant's manager monitored for gaps in scanning activity and penalized employees for any gap longer than 10 minutes.

155. Wage Order No. 9, Section 12, requires each employer to provide each of Plaintiff with at least one rest period of 10-minutes rest time for each 4 hours, or major fraction thereof, that each such employee works during each workday.

156. Labor Code Section 226.7 provides that if an employer fails to provide an employee with a rest period in accordance with Wage Order No. 9, the employer must pay such employee(s) one additional hour of pay at the employee's regular rate of pay for each day that such a rest period was not provided.

157. By their failure to provide rest periods for every four (4) hours or major fraction thereof worked per workday by non-exempt employees, and failing to provide one (1) hour's pay in lieu thereof, as alleged above and herein, Defendants willfully violated the provisions of Labor Code sections 226.7 and IWC Wage Orders at section (12).

158. By failing to keep adequate time records required by sections 226 and 1174(d) of the Labor Code and IWC Wage Order at section (7), Defendants have injured Plaintiff and made it difficult to calculate the unpaid rest and meal period compensation due Plaintiff. On information and belief, Plaintiff alleges that Defendants' failure to maintain accurate records was willful.

159. As a result of the unlawful acts of Defendants, Plaintiff was deprived of premium wages in amounts to be determined at trial, and is entitled to an accounting and recovery of such amounts, plus interest and penalties thereon, attorneys' fees, and costs, under the Labor Code and the applicable IWC Wage Orders.

160. WHEREFORE, Plaintiff seeks relief as described herein and below.

## Seventh Cause of Action

### Failure to Pay All Wages at Termination (Labor Code §§ 201- 203)

161. Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

162. Plaintiff alleges that Defendants has systematically failed pay Plaintiff all wages owed at termination.

163. Defendants failed to pay Plaintiff, without abatement, all wages (as defined by applicable California law) within the time required by applicable California law. Defendants' failure to pay said wages within the required time was willful within the meaning of Labor Code section 203.

164. Defendants failed to timely pay all wages due as penalties pursuant to Labor Code sections 201, 202, 203.

165. Therefore, Plaintiff is entitled to one day's wages for each day he was not timely paid all said wages due, up to a maximum of thirty days' wages for each employee.

166. WHEREFORE, Plaintiff seeks relief as described herein and below.

/ / /

/ / /

/ / /

/ / /

## Eight Cause of Action

### Violation of Unfair Competition Law
### (Bus. and Prof. Code § 17200 *et seq.*)

167. Plaintiff incorporates all previous paragraphs of this Complaint as though fully set forth herein.

168. Plaintiff alleges that Defendants has systematically failed pay Plaintiff all wages owed at termination.

169. Plaintiff brings this action on behalf of himself pursuant to Business and Professions Code sections 17200 *et seq.* Defendants' conduct alleged above constitutes unlawful business acts and practices in violation of Business & Professions Code sections 17200 *et seq.* Defendants engaged in unfair competition in violation of California's Unfair Competition Law ("UCL") by violating, *inter alia*, each of the following laws, Labor Code sections 201, 202, 203, 226, 226.7, 226.8, 510, 512, 1174, 1175, 1182.12, 1194, 1197, 1197.1, 1198, 1199, and 2802, and applicable Wage Orders, including Wage Order No. 9.

170. Defendants' course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL. Defendants' conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

171. The harm to Plaintiff in being wrongfully denied lawfully earned wages outweighs the utility, if any, of Defendants' policies or practices and, therefore, Defendants' actions described herein constitute an unfair business practice or act within the meaning of the UCL.

172. The unlawful and unfair business practices and acts of Defendants, and each of them, described above, injured Plaintiff in that he was wrongfully denied the payment of earned wages.

173. Plaintiff seeks restitution in the amount of the respective unpaid wages earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week, or eight hours in a day, and double the regular rate of pay for work performed in excess of twelve hours per day and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

174. Pursuant to Business and Professions Code sections 17200 *et seq.*, for the statute of limitations period covered by this cause of action, Plaintiff is entitled to restitution for at least the following: the unpaid withheld and retained by Defendants referred to above.

175. Plaintiff, and the general public, are also entitled to permanent injunctive and declaratory relief prohibiting Defendants from engaging in the violations and other misconduct referred to above.

176. Defendants are also liable to pay attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable law, and costs. Plaintiff also seeks recovery of attorneys' fees and costs of this action to be paid by Defendant, as provided by the UCL and California Labor Code §§ 218, 218.5, and 1194.

177. WHEREFORE, Plaintiff seeks relief as described herein and below.

## VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For civil penalties pursuant to 8 U.S.C. § 1331, 29 et. seq., and 42 U.S.C. § 1981 et seq.

2. For civil penalties pursuant to Labor Code §§ 226(e), 226.8(b), 226.8(c), 1174.5, and 1197.1;

3. For compensatory damages representing the amount of backpay owed to Plaintiff for wrongful termination and discrimination;

4. For compensatory damages representing the amount of unpaid wages owed to Plaintiff;

5. For compensatory damages pursuant to Labor Code § 226.7 for missed meal and rest breaks;

6. For compensatory damages pursuant to Labor Code S§ 2802;

7. For reasonable attorneys' fees and costs pursuant to Labor Code §§s 226(e), 1194, and 2802(c);

8. For civil penalties, attorneys' fees and costs;

9. For general, special damages as deemed by the Court appropriate;

10. For liquidated damages pursuant to Labor Code § 1194.2;

11. For waiting time penalties for failing to pay all wages termination;

12. For pre-judgment interest;

13. For restitution as described in the cause of action under Business & Professions Code §§ 17200 *et seq.* above;

14. For permanent injunctive and declaratory relief described in the cause of action under Business & Professions Code §§ 17200 *et seq.* above;

15. A declaratory judgment that the practices complained of herein are unlawful under federal California state law;

16. Attorney's fees and costs of suit, including expert fees pursuant to California Labor Code §§218.5, 1194, and Code Civ. Proc. §1021.5; and

17. Such other injunctive and equitable relief as the Court deems proper.

**DATED:** July 3, 2025

**NUNES LAW GROUP, APC**

Anthony J. Nunes

By: Anthony J. Nunes, Esq.
Attorneys for Plaintiff LUTHER SMITH